IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CT-3232-BO

| | |
|---|---|
| ANTON JOHNSON, </br> Plaintiff, | ) </br> ) </br> ) |
| v. | )    O R D E R </br> ) |
| ERIC HOLDER, et al., </br> Defendant. | ) </br> ) </br> ) |

Anton Johnson (hereinafter "Johnson" or "plaintiff") is presently before the court with the filing of this Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), action. Compl., D.E. 1. Pursuant to 28 U.S.C. § 1915, courts shall review complaints in which one seeks relief from a governmental entity or officer, and dismiss such complaints when they are "frivolous." 28 U.S.C. § 1915(e)(2)(B)(i). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute on other grounds).

As background, plaintiff is currently housed at the Federal Correctional Center at Butner, North Carolina, as a civil detainee pursuant to the Adam Walsh Act, 18 U.S.C. § 4248 (herein referred to as "§ 4248"), which provides for the civil commitment of "sexually dangerous person[s]" in federal custody for care and treatment following the expiration of their federal prison sentences. 18 U.S.C. § 4248(a); see also, Timms v. Johns, 627 F.3d 525, 526 (4th Cir.2010). The court recognizes that certain portions of the Prison Litigation Reform Act are not applicable to plaintiff as a civil detainee. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). However, a complaint filed by a civil detainee may be dismissed for failure to state a claim under the in forma pauperis statute, 28 U.S.C. Section 1915(e) (2)(B). Id. at 1260; Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001).

The court finds that plaintiff asserts the following: 1) his confinement in a federal prison as a civil committee violates his due process rights because it effectively extends his criminal sentence (Claim 1); 2) the Secretary of Health and Human Services has violated his 5th and 14th Amendment rights because she has failed to consult with the Attorney General on the provisions within the Adams Walsh Act (Claim 2); 3) his confinement wherein he is subject to BOP rules and regulations designated to punish criminals violates his 5th and 14th Amendments (Claim 3, 9-10); 4) the treatment program has been implemented contrary to the standards of the CFR and violates plaintiff's 5th and 14th Amendments (Claim 4); 5) the opening and inspection of all mail ingoing and outgoing violates plaintiff's 4th and 5th Amendment protections (Claim 5); 6) monitoring phone conversations violates the 4th and 5th Amendments (Claim 6); 7) the shakedowns and/or searches of the civil detainees cells violates the 4th and 5th Amendments (Claim 7); and the civil detainees have been subjected to "the Zimmer Act" in violation of the 4th and 5th Amendments (Claim 8).

<u>Claim 1</u>

Plaintiff alleges that his confinement in a federal prison as a civil committee violates his due process rights because it effectively extends his criminal sentence. Compl., IV. Stmt. of Claim, D.E. 1. The United States Supreme Court has determined that the statutory scheme set forth in § 4248 is Constitutional. <u>See</u> United States v. Comstock, 560 U.S. 126, 149 (2010). Furthermore, to the extent plaintiff argues that § 4248 is criminal rather than civil in nature, the Fourth Circuit Court of Appeals has ruled that § 4248 commitment actions are civil proceedings. United States v. Timms, 664 F.3d 436, 456 (4th Cir. 2012); <u>see also,</u> Allison v. Snyder, 332 F.3d 1076, 1079–1081 (7th Cir. 2003) (holding the placement of persons civilly confined under the Illinois Sexually Dangerous

Persons Act in sex offender group therapy program did not violate due process). Based upon the foregoing, this claim is dismissed as frivolous.

Claim 2

Plaintiff's next claim is that the Secretary of Health and Human Services has violated his 5th and 14th Amendment rights because she has failed to consult with the Attorney General on the provisions within the Adams Walsh Act. The claim states that "[t]hus far, the Secretary has not inspected, much less reviewed the current treatment facility." Plaintiff simply has no standing to assert this claim. To have standing, a plaintiff must allege that he, himself, sustained deprivation of a right, privilege, or immunity secured by the Constitution or federal law. Imates v. Owens, 561 F.2d 560 (4th Cir. 1977); see also, Allen v. Wright, 468 U.S. 737, 751 (1984). Furthermore, to demonstrate standing, "a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by requested relief." Allen v. Wright, 468 U.S. at 751. Plaintiff has shown no deprivation of any right, privilege, or immunity secured by the Constitution or federal law. Neither has the plaintiff alleged any sustained injury from the allegation. The claim is dismissed.

Claim 3, 8-10

Plaintiff claims that his confinement wherein he is subject to BOP rules and regulations, including the Zimmer Amendment,[1] are intended to punish criminals and violates his 5th and 14th

---

[1] The Zimmer Amendment prohibits using funds "to provide [certain] amenities or personal comforts in the Federal prison system," including in-cell televisions, coffee pots, and hot plates, "the viewing of R, X, and NC–17 rated movies," any training or equipment for certain sports and bodybuilding, and "any electric or electronic musical instrument." Pub. L. No. 104–208, § 611, 110 Stat. 3009; see Kimberlin v. U.S. Dep't of Justice, 318 F.3d 228, 230–31 (D.C.Cir. 2003) (per curiam).

3

Amendments. "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 321–22 (1982). However, a detainee still may be subject to conditions within the bounds of professional discretion that place restrictions on his personal freedoms, including the Zimmer Amendment. Id.; see Allison, 332 F.3d at 1079 ("[P]lacement [of a civil detainee] in a prison, subject to the institution's usual rules of conduct, [does not per se] signify punishment ...."); see also, Timms v. Johns, No. 5:10–CT–3210–BO, 2013 WL 6577379, at *4 (E.D.N.C. Dec. 13, 2013) ("[C]ivil detainees are subject to the same security policies as those used at correctional facilities."). Moreover, plaintiff has not asserted how the general application of BOP policies violates his constitutionally protected rights. White v. White, 886 F.2d 721, 724 (4th Cir. 1989) (pro se litigant complaints must be liberally construed; however, a minimum level of factual support is required); see also Adams v.Rice, 40 F.3d at 74 (4th Cir. 1994). Thus, this claim is dismissed.

Claim 4

Plaintiff next alleges that "Warden Justine Andrews has allowed his treatment staff/CTP staff, to implement a treatment program contrary to the standards of CFR 42 § 482.13-25, and have therefore violated my 5th and 14th Amendment Rights." This claim fails of several grounds.

First, this is nothing more than a generic and unsupported statement of an alleged malfeasance without a basis in fact, and meritless. White, 886 F.2d 721, 724 (4th Cir. 1989) (pro se litigant complaints must be liberally construed; however, a minimum level of factual support is required); see also Adams, 40 F.3d at 74 (conclusory allegations of retaliation are frivolous).

4

Second, when determining whether a civilly committed person's confinement conditions violate the Fifth Amendment, courts must balance the civilly committed person's constitutionally protected liberties with the government's reasons for restricting those liberties. See Youngberg, 457 U.S. at 320–22. While "Due process requires that the conditions and duration of confinement [for a civilly committed person] bear some reasonable relation to the purpose for which [the person is civilly] committed," Seling v. Young, 531 U.S. 250, 265 (2001), government officials are permitted to determine the conditions of a civilly committed person's confinement, within the bounds of professional discretion. See Youngberg, 457 U.S. at 321–22. Furthermore, the Supreme Court has "never held that the Constitution prevents a State from civilly detaining those for whom no treatment is available, but who nevertheless pose a danger to others." Kansas v. Hendricks, 521 U.S. 346, 366 (1997); see United States v. Comstock, 560 U.S. 126, 131 (2010) (noting that pursuant to 18 U.S.C. § 4247(e), "[c]onfinement in the federal facility will last until . . . the person's mental condition improves to the point where he is no longer dangerous (with or without appropriate ongoing treatment)" or until a state assumes custody); Strutton v. Meade, 668 F.3d 549, 557 (8th Cir.), cert. denied, 133 S. Ct. 124 (2012); Burch v. Jordan, 444 F. App'x 236, 238 (10th Cir. 2011) (unpublished); Allison v. Snyder, 332 F.3d 1076, 1081 (7th Cir. 2003) (rejecting "contention that treatment must be tailored to each individual"); Conover v. Main, No. CIV.A. 11-6324 PGS, 2013 WL 1145517, at *7 (D.N.J. Mar. 18, 2013) (unpublished) ("Thus, under Hendricks, a state may constitutionally deprive a person of freedom from detention so long as it establishes dangerousness and a mental abnormality that makes it difficult for the person to control his dangerous behavior, regardless of whether or not the State is providing treatment"); Hubbart v. Superior Court, 19 Cal. 4th 1138, 1166, 969 P.2d 584, 602 (1999); Matter of Wolf, 486 N.W.2d 421, 423 (Minn. 1992).

Claim 5

Plaintiff asserts that the opening and inspection of all mail ingoing and outgoing violates his 4th and 5th Amendment protections. Courts have repeatedly upheld institutional rules concerning mail restrictions for civilly committed sexually dangerous persons. See e.g., Rivera v. Rogers, 224 Fed. App'x 148, 151 (3rd Cir. 2007) (upholding mail monitoring policy for civilly committed sexually dangerous persons and finding that the Special Treatment Unit has a legitimate interest in both the safety of its facility and the rehabilitation of its patients); Ballard v. Johns, No. 5:11-VCT-3042-H, 2014 WL 1285728, at *7 (E.D.N.C. Mar. 27, 2014); Turner v. Federal Bureau of Prisons, No. 5:11–CT–3177–D, 2013 WL 1700937, at *3 (E.D.N.C. Apr. 18, 2013).

Plaintiff has failed to show that defendants personally violated BOP policy and has made no specific allegations regarding this claim. BOP policy provides that "outgoing mail from a pretrial inmate may not be sealed by the inmate and may be inspected by staff." 28 C.F.R. § 540.14(b). Furthermore, BOP regulation and policy provides that "[i]nstitution staff shall open and inspect all incoming general correspondence." 28 C.F.R. § 540.14. The BOP monitors incoming mail "to maintain security or monitor a particular problem confronting an inmate." Id. The BOP's regulation regarding the inspection of incoming and outgoing mail is reasonably related to legitimate penological interests. See Altizer v. Deeds, 191 F.3d 540, 547–49 (4th Cir.1999) (opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interest, and is therefore constitutional); see also, e.g., Ballard v. Johns, No. 5:11–CT–3042–H, 2014 WL 1285728, at *7 (E.D.N.C. Mar. 27, 2014) ("Courts have repeatedly upheld institutional rules concerning mail restrictions for civilly committee sexually dangerous persons.") (citation omitted), aff'd, No. 14–6515, 2014 WL 3720190 (4th Cir. July 29, 2014). To the extent any of the mail at

6

issue was legal mail, which may not be opened outside of the presence of the prisoner-addressee, see, e.g., Wolff, 418 at 575–77, to state a claim for a constitutional violation, a plaintiff must show actual injury. See Lewis v. Casey, 518 U.S. 343, 350–54 (1996). To show actual injury, one must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id. at 353 (footnote omitted); Michau v. Charleston Cnty., 434 F.3d 725, 728 (4th Cir. 2006); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc). No such allegation has been asserted. Therefore, as to the allegations of mail restrictions, plaintiff's claims fail.

Claim 6

Plaintiff next asserts that defendant Andrews violated his constitutional rights because Andrews permitted his staff to listen to and record plaintiff's telephone conversations. In the civil commitment context, courts have repeatedly upheld institutional rules concerning restrictions on electronic access, including telephone use. See, e.g., Timms, 2013 WL 6577379, at *6 (citing Rivera v. Rogers, 224 F. App'x 148, 151 (3d Cir. 2007); Graham v. Main, No. 10–5027(SRC), 2011 WL 2412998, at *13–14 (D.N.J. June 9, 2011); Burch v. Jordan, No. 07-3236, 2010 WL 5391569, at *21 (D. Kan. Dec. 22, 2010); Semler v. Ludeman, No. 09-0732, 2010 WL 145275, at *9–16 (D. Minn. Jan. 8, 2010)). Thus, the claim is dismissed.

Claim 7

Claim 7 asserts that the shakedowns and/or searches of the civil detainees cells violates the 4th and 5th amendments. To begin, Johnson has not sufficiently connected the named defendants to this claim. A Bivens action may not be grounded upon a respondeat superior theory. See, e.g., Iqbal, 556 U.S. at 676; Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A supervisor may be held responsible for a subordinate's unconstitutional

act only if the supervisor was involved personally or participated in the unconstitutional act. See, e.g., Iqbal, 556 U.S. at 676. Thus, a plaintiff must show that (1) "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury"; (2) the supervisor responded so inadequately "as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "there was an affirmative causal link between the supervisor's inaction" and plaintiff's alleged constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994) (quotations omitted).

The case is DISMISSED in its entirety as frivolous under 28 U.S.C. § 1915.

SO ORDERED, this the 5 day of March 2015.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE